**Balwinder SINGH, Petitioner,**

v.

**Eric H. HOLDER Jr., Attorney General, Respondent.**

**No. 07–74514.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 15, 2009.

Filed Sept. 30, 2009.

Inna Lipkin, Esquire, Counsel, Law Offices of Inna Lipkin, Redwood City, CA, for Petitioner.

Ada Elsie Bosque, Trial, Alison Marie Igoe, Esquire, Principal Litigation Counsel, OIL, DOJ—U.S. Department of Justice, Washington, DC, Ronald E. Lefevre, Office of the District Counsel, Department of Homeland Security, San Francisco, CA, for Respondent.

Before: SCHROEDER, REINHARDT and HAWKINS, Circuit Judges.

### MEMORANDUM *

Balwinder Singh, a native and citizen of India, petitions for review of a decision of the Board of Immigration Appeals ("BIA") affirming the determinations of an immigration judge ("IJ") that Singh is ineligible for asylum because his application is time-barred, and is ineligible for asylum, withholding of removal under the Immigration and Nationality Act ("INA"), and withholding of removal under the Convention Against Torture ("CAT") because he engaged in terrorist related activities. This court has jurisdiction to review the BIA's denial of asylum and withholding of removal on terrorist grounds. *See Khan v. Holder*, 584 F.3d 773, 780–81 (9th Cir. 2009). Revised Section 1252(a)(2)(D) of Chapter 8 of the United States Code restores our jurisdiction to determine the scope and meaning of the statutory terrorism bar, and to review the BIA's determination that a petitioner engaged in terrorist activity. *Id.*

■ The BIA did not err in determining that Singh engaged in terrorist related activity by providing material support to a terrorist group. It was thus correct in concluding that Singh was statutorily barred from obtaining relief in the form of asylum, withholding of removal under the INA, and withholding of removal under the Convention Against Torture ("CAT"). *See* 8 U.S.C. § 1182(a)(3)(B)(iv)(VI).

Substantial evidence in the record supports the BIA's determination that the Khalistan Commando Force ("KCF") is a terrorist organization within the meaning of 8 U.S.C. § 1231(b)(3)(B)(iv) (2009). Further, Singh testified that he provided overnight accommodation and food to members of the Khalistan Commando Force every five to seven days during a one year period. [AR 764.]

Singh argues that he did not "knowingly" provide material support to terrorists when he assisted the members of the KCF, because his cognitive ability was limited by his fifth grade education and the electric shock therapy that he underwent in 1981 to treat a head injury. [AR 978.] He claims that these cognitive impairments prevented him from understanding that by feeding and sheltering his cousin and other members of the KCF, he was

---

* This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

supporting individuals engaged in terrorist activity.

Singh testified, however, that he knew that the KCF were "militants" who "demand[ed] their rights with the help of arms," [AR 801] that his uncle was forced to flee India because the police suspected he was hiding explosives for the KCF, [AR 756, 965] and that the KCF members he, himself, sheltered came to his house "secretly at night" because they were wanted by the police. [AR 765.] Singh's written declaration and testimony constitute substantial evidence that he knew that the KCF was a terrorist organization, and a reasonable adjudicator would not be compelled to conclude otherwise. Because Singh is not eligible for asylum on terrorist grounds, he is also barred from obtaining withholding of removal under the INA or under CAT.

■ The BIA also did not err in determining that Singh was ineligible for deferral of removal under CAT. The BIA concluded that Singh had failed to prove that it was more probable than not that he would be tortured if he were to return to India. This conclusion was based on evidence including United States Department of State Country Reports on Human Rights Practices for India from 1996 [AR 923], 1999 [AR 840], and 2005 [see AR 5], and Singh's own testimony about his individual circumstances. The State Department reports stated that the widespread abuse of Sikhs by the Indian government that had been present in the 1990s ceased to exist from 1996 to 2000, [AR 52] and that while the Indian government continued to arrest supporters of a Sikh state, it limited such arrests to prominent leaders of pro-Sikh groups. [Id.] Singh testified that he was not a member of any such

group, let alone a prominent leader. [Id.] A reasonable adjudicator would not be compelled to draw a conclusion contrary to that reached by the BIA. See 8 U.S.C. § 1252(b)(4)(B) (2009).

**DENIED.**